# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CRIMINAL CASE NO. 1:13-cr-00079-MR-DLH-4

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| JEFFREY KIRKLAND, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant Jeffrey Kirkland's

Rule 29 Motion and Memorandum of Law in Support Thereof [Doc. 239].

## I. PROCEDURAL BACKGROUND

On December 3, 2013, the Grand Jury for this District returned a multi-

count Bill of Indictment against the Defendant Jeffrey Kirkland ("Kirkland"),

as well as defendants George Wade Cook, a/k/a Rooster ("Cook"), Gregory

Ray Dehart ("Dehart"), John Matthew Frady, a/k/a Ghost ("Frady"), Ramona

Jamison Lail ("Lail"), Jimmy Dwayne Lawing, a/k/a Dick ("Lawing"), Miguel

Santos-Maldonado, a/k/a Mateo Segura ("Maldonado"), Carlos Alvarado

Mendoza, a/k/a Tequila ("Carlos Mendoza" or simply "Carlos"), Rigoberto

Alvarado Mendoza, a/k/a Big Boy ("Rigoberto Mendoza" or simply

"Rigoberto"), John Louis Pivonka ("Pivonka"), Tommy Ray Sisk ("Sisk"), and Taide Alvarado Vergara ("Vergara"). As is relevant to Defendant Kirkland, Count One of the Bill of Indictment charged him along with Cook, Dehart, Frady, Lail, Lawing, Maldonado, Carlos Mendoza, Rigoberto Mendoza, Pivonka, Sisk, and Vergara with conspiracy to possess with intent to distribute at least 50 grams of actual methamphetamine and at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, from in or around June of 2011 and continuing until on or about July 20, 2013, in Buncombe, Cleveland and McDowell Counties, North Carolina, and elsewhere. [Doc. 1]. Count Twenty-Two of the Indictment charged Kirkland, Maldonado, and Rigoberto Mendoza with possession with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), on or about January 30, 2013, in McDowell County, North Carolina. [Id.].

Following his arrest in the State of Georgia, Kirkland made an appearance in this Court with retained counsel and pleaded not guilty to the charges against him. His case proceeded to trial on January 5, 2015.[1] The

---

[1] Of the other defendants charged in this case, Cook, Dehart, Frady, Lail, Lawing, Carlos Mendoza, Pivonka, and Sisk have all pleaded guilty to various charges. To this date, defendants Maldonado, Rigoberto Mendoza, and Vergara remain fugitives.

Government presented over forty witnesses, including thirty-one members of law enforcement, four expert witnesses, and numerous co-defendants and alleged co-conspirators. At the close of the Government's proof, Kirkland made an oral Rule 29 motion for a judgment of acquittal, upon which the Court reserved decision pursuant to Fed. R. Crim. P. 29(b). Thereafter, Kirkland presented one witness, his brother Bobby Kirkland, in his defense. Upon the conclusion of his evidence, Kirkland renewed his Rule 29 motion, and the Court again deferred ruling. The parties thereafter presented closing arguments to the jury. After several hours of deliberation, the jury returned a verdict of guilty as to the conspiracy charged set forth in Count One of the Bill of Indictment and a verdict of not guilty as to the possession charge set forth in Count Twenty-Two. [Doc. 236].

Kirkland filed the present post-trial motion pursuant to Rule 29 on January 20, 2015, arguing that there is insufficient evidence to support his conspiracy conviction. [Doc. 239]. The Government filed its Response in opposition on February 4, 2015. [Doc. 250]. Having been fully briefed, this motion is now ripe for disposition.

## II.    STANDARD OF REVIEW

When a defendant challenges a jury's verdict on the basis of insufficient evidence, "the verdict will be sustained if, when the evidence is

viewed in the light most favorable to the government, there is substantial evidence to support it." United States v. Sullivan, 455 F.3d 248, 260 (4th Cir. 2006). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Young, 609 F.3d 348, 355 (4th Cir. 2010) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). In determining the issue of substantial evidence, the Court does "not reweigh the evidence or the credibility of witnesses, but assume[s] that the jury resolved all contradictions in the testimony in favor of the Government." United States v. Roe, 606 F.3d 180, 186 (4th Cir. 2010). Further, in reviewing the evidence, the Court must "not analyze evidence in a piecemeal manner, but must consider its cumulative effect . . . ." United States v. Burgos, 94 F.3d at 871; United States v. Cote, 544 F.3d 88, 98 (2d Cir. 2008) (noting that the evidence must be reviewed "in its totality, not in isolation, and the government need not negate every possible theory of innocence").

The Court owes deference to a jury's verdict, United States v. Abu Ali, 528 F.3d 210, 244 (4th Cir. 2008), and this is especially true in reviewing a conspiracy conviction, United States v. Anderson, 747 F.3d 51, 72-73 (2d Cir.), cert. denied sub nom., Hakimi v. United States, 135 S.Ct. 122 (2014).

"This is so because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." United States v. Pitre, 960 F.2d 1112, 1121 (2ᵈ Cir. 1992) (internal quotation marks and citation omitted). Thus, in reviewing the jury's verdict, the question is not whether the Court is convinced of the defendant's guilt beyond a reasonable doubt but rather whether the evidence presented at trial, viewed in the light most favorable to the Government, "could support any rational determination of guilty beyond a reasonable doubt." United States v. Powell, 469 U.S. 57, 67 (1984). The Court is mindful that it "may not overturn a substantially supported verdict merely because it finds the verdict unpalatable or determines that another, reasonable verdict would be preferable." Burgos, 94 F.3d at 862. Rather, the Court can reverse a jury's verdict only "if the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." Id.

## III.   FACTUAL BACKGROUND

Taken in the light most favorable to the Government, the evidence adduced at trial established the following facts.

Beginning in June 2011 and continuing through July 2013, federal, state, and local law enforcement agencies from North Carolina and South

Carolina conducted an investigation of a multi-tiered supply network responsible for trafficking large quantities of crystal methamphetamine between Georgia, South Carolina and North Carolina. Through a series of controlled buys, wiretaps, and physical surveillance, investigators were able to determine that the first tier of the network included Sisk, Cook, and Dehart, who distributed crystal meth directly to the network's customers or users in the area of McDowell and Rutherford Counties in North Carolina. The second tier included Frady, Lawing, Pivonka, and Lail, who acted as mid-level distributors in North Carolina and/or South Carolina for the network. The third tier included Rigoberto Mendoza, Carlos Mendoza, and Vergara. Rigoberto Mendoza was in charge of the North Carolina end of the network, and he was assisted in his narcotics trafficking activities by his brother Carlos and their nephew Vergara. The Mendozas and Vergara received and distributed multi-pound quantities of crystal meth to the mid-level distributors of the network.

The fourth and final tier of the organization consisted of Maldonado, a Georgia-based narcotics trafficker, who acted as Rigoberto's primary source of supply for crystal meth. At trial, the Government presented evidence that Kirkland, who is also a resident of Georgia, assisted Maldonado by driving

him on four occasions from Georgia when Maldonado delivered crystal meth to the Mendozas at a secluded stash house referred to as "the Ranch."

Specifically with respect to Kirkland's involvement, the evidence presented at trial, when considered in the light most favorable to the Government, established the following. In late 2012 and early 2013, Carlos and Rigoberto received deliveries of crystal meth from Maldonado every two or three weeks. Maldonado made approximately ten or eleven trips to the Ranch to deliver crystal meth to Carlos and Rigoberto. On each occasion Maldonado would bring one or two pounds of crystal meth at a time. In exchange, Carlos and Rigoberto would pay Maldonado $15,000 per pound of crystal meth.

The Government's evidence connecting the Defendant to the conspiracy hinged largely on testimony of Carlos Mendoza. He testified that Kirkland drove Maldonado to the Ranch on four occasions, including at least one time in November 2012 and another time approximately four weeks later.[2] When Maldonado arrived at the Ranch, he would get out of the rear passenger seat with the crystal meth in a "clear" or "see-through" container

---

[2] No other member of the conspiracy was able to identify Kirkland, or was even able to testify to seeing him before. Indeed, even Carlos Mendoza – the only witness who testified to Kirkland's presence at the Ranch – was unable to identify Kirkland in the courtroom, but was able to identify a photo of Kirkland as the driver on those occasions.

in his hands.  Carlos testified that sometimes the meth was in a Tupperware container and that other times it was in a jar or a pitcher, but that the container was always "clear" or "see-through."  Maldonado would then enter the cabin on the property for a few minutes while Kirkland stayed in the car.  On at least one occasion, Carlos talked to Kirkland and offered him a glass of water, which Kirkland refused.  After a few minutes, Maldonado would return to the vehicle with a plastic grocery bag containing cash organized in stacks and secured by rubber bands.

Carlos also testified that Maldonado used a large cooler filled with ice and water while transporting meth so that if he were stopped by law enforcement, he could dump the methamphetamine into the water in order to avoid detection of the methamphetamine by a field test.

Carlos further testified that on at least one occasion, Maldonado stated to other members of the conspiracy that he had to "pay his driver."

On January 30, 2013, law enforcement officers stopped Kirkland and Maldonado after they left the Ranch.  During this traffic stop, Kirkland appeared to be very nervous, as he was breathing heavily, his pulse was beating so strongly as to be visible on his neck, and his hands were shaking uncontrollably.  When asked by officers to explain where he and Maldonado were going and why, Kirkland told the officers that he and Maldonado had

driven from Georgia to North Carolina (a trip of over three hours) to cut a tree that had fallen on a carport at a friend's home, that he cut trees for a living, that it took almost an hour to complete the job, and that they used saws.[3]  At the time of the traffic stop, however, neither Kirkland nor Maldonado was wet or dirty, even though it had been raining all day.  Kirkland consented to a search of the vehicle.  During their search of Kirkland's car, officers did not find any saws or other equipment necessary to cut down a tree or section it after it was felled.  Officers did, however, discover $30,000 inside a plastic bag under the backseat where Maldonado was sitting.  Officers also recovered several rubber bands, empty plastic bags, and a large ice cooler in the vehicle.

On March 23, 2013, a law enforcement officer observed Kirkland at the new stash house employed by Rigoberto, Carlos, and Vergara in Marion, North Carolina.  Kirkland was pulled over after leaving the stash house.  He was alone in the car.  During this traffic stop, he appeared to be very nervous with shaky hands and a pulse beating so strongly as to be visible on his neck. When Kirkland was asked where he was going, he reported that he had

---

[3] There was evidence presented at trial that Kirkland was acquainted with Maldonado by virtue of the fact that he was dating Maldonado's sister at the time.  There was also evidence presented that Kirkland owned a tree business and that he occasionally employed Maldonado to help him in this business.

come up from Georgia to look for his girlfriend, that he had not stopped anywhere prior to the vehicle stop, that he did not know where he was going to meet with his girlfriend, and that she had a relative in the area but he could not give the address or even a general location of that person. Kirkland denied knowing that Maldonado was in the area, even though Maldonado had been stopped earlier in the day very near where Kirkland was stopped. Kirkland consented to a search of the vehicle. No drugs or drug proceeds were found in the vehicle, and a canine sniff was negative for the presence of any narcotics.

## IV.    ANALYSIS

### A.    The January 30, 2013 Traffic Stop

As an initial matter, the Defendant argues that because the jury acquitted him of the charge of possession of methamphetamine on January 30, 2013, the Government is collaterally estopped from relying on any evidence regarding the events on January 30, 2013, to support the jury's determination of Kirkland's guilt as to the conspiracy conviction. In so arguing, the Defendant relies upon United States v. Ohayon, 483 F.3d 1281 (11th Cir. 2007).

In Ohayon, the defendant was charged with conspiracy to possess with intent to distribute ecstasy and attempted possession with intent to distribute

ecstasy, both on the basis of a single attempted drug transaction.  Ohayon, 483 F.3d at 1282.  The defendant showed up at a hotel, allegedly at the direction of others, to take possession of several duffle bags for delivery to another person.  Id. at 1283. The sole issue at trial was whether the defendant was aware the duffle bags he was picking up contained drugs.  Id. at 1284.  The defendant's involvement in the alleged conspiracy was limited to this one attempted pick-up; the defendant did not open the bags, inquire about their contents or act as if he knew what they contained.  The defendant further did not have the money for the drugs, and he appeared unaware of the details of the plan one would have expected a courier to know. Additionally, the defendant's behavior when stopped was consistent with that of an innocent person.  Id. at 1283-84.  At trial, the jury found the defendant not guilty of attempted possession but could not reach a verdict as to the conspiracy count.  Id. at 1285.  Before a new trial could be held on the conspiracy charge, the district court dismissed the count, holding that the government was collaterally estopped from retrying the defendant on the conspiracy count.  In so holding, the district court reasoned that "it would be logically inconsistent to conclude both that [the defendant] did not know the bags contained drugs and that he was aware of and participated in the conspiracy to possess those drugs . . . ."  Id.

On appeal, the Eleventh Circuit affirmed the district court's judgment barring a retrial. Ohayon, 483 F.3d at 1282-83. The Eleventh Circuit applied a two-step test to determine whether the trial court properly barred a retrial, explaining that, first, the Court "must examine the verdict and the record to see what facts, if any, were necessarily determined in the acquittal at the first trial" and then, second, the Court "must determine whether the previously determined facts constituted an essential element of the second offense." Id. at 1286 (internal quotation marks and citations omitted). In addressing the first requirement, the court considered the evidence and concluded that a rational jury could not have acquitted the defendant on any ground *other than his ignorance of the contents of the duffle bags* as that was the sole issue in the trial. Id. at 1287.

Kirkland's reliance on Ohayon is misplaced. In Ohayon, the government's proof of conspiracy depended on its proof of the substantive count. As explained by the Eleventh Circuit, there was only one dispute at trial and that "dispute was resolved by the jury in favor of Ohayon." Id. at 1287. By contrast, the Government's proof of Kirkland's participation in the charged conspiracy did not hinge solely on whether he possessed methamphetamine on January 30, 2013. Rather, the Government's proof of conspiracy included not only evidence of the January 30, 2013 traffic stop,

but also evidence of Kirkland's involvement in the delivery of methamphetamine to the Ranch, and his continued association with members of the drug conspiracy thereafter. Thus, while the jury necessarily determined that Kirkland did not possess methamphetamine on January 30, 2013 in acquitting him of the possession charge, this factual determination was not fatal to any essential element of the conspiracy charge. Further, even though the jury determined that Kirkland was not guilty of possessing methamphetamine on January 30, 2013, his association with Maldonado on that date and the discovery of a large sum of cash in Kirkland's vehicle were nevertheless probative of his involvement in the ongoing conspiracy. For these reasons, Ohayon does not preclude the Government or this Court from relying on any evidence regarding the events on January 30, 2013, to support the jury's determination of Kirkland's guilt as to the conspiracy conviction.

## B.  Sufficiency of Evidence for Conspiracy Conviction

In challenging his conviction, the Defendant argues that there was insufficient evidence presented from which a reasonable jury could conclude that the Defendant had knowledge of the specific objective of the conspiracy and that he knowingly joined in that conspiracy.

In order to prove a conspiracy, the Government must prove beyond a reasonable doubt the following elements: "(1) an agreement between two or more persons to engage in conduct that violates a federal drug law, (2) the defendant's knowledge of the conspiracy, and (3) the defendant's knowing and voluntary participation in the conspiracy." United States v. Gomez-Jimenez, 750 F.3d 370, 378 (4th Cir.), as corrected (Apr. 29, 2014), cert. denied sub nom. Juarez-Gomez v. United States, 135 S. Ct. 305 (2014) and cert. denied, 135 S. Ct. 384 (2014). Once the Government has shown the existence of a conspiracy, "the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992). Of course, the Government must still prove the defendant's connection to the conspiracy beyond a reasonable doubt. United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (en banc).

Here, the Government presented overwhelming evidence of the existence of a multi-tiered conspiracy to possess with intent to distribute large quantities of methamphetamine between defendants Cook, Dehart, Frady, Lail, Lawing, Maldonado, Carlos, Rigoberto, Pivonka, Sisk, and Vergara. This is not disputed by the Defendant. Rather, the question

presented by the Defendant's present motion is whether there is sufficient evidence to convict Kirkland of knowing participation in this conspiracy.

Circumstantial evidence alone may be used to prove the defendant's knowledge and intent. United States v. Howard, 773 F.3d 519, 525 (4th Cir. 2014) ("Given the 'clandestine and covert' nature of conspiracies, the government can prove the existence of a conspiracy by circumstantial evidence alone."); Anderson, 747 F.3d at 51 (noting that use of circumstantial evidence to prove specific intent in drug conspiracy case is "commonplace"). Such circumstantial evidence may include evidence of a defendant's relationship with other members of the conspiracy, the length of their association, the defendant's attitude and conduct, and the general nature of the conspiracy. Burgos, 94 F.3d at 858 (citing United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984). The Government is not required to exclude "every reasonable hypothesis of innocence, provided the summation of the evidence permits a conclusion of guilt beyond a reasonable doubt." Burgos, 94 F.3d at 858 (citing Holland v. United States, 348 U.S. 121, 139-40 (1954)).

Here, the evidence presented by the Government placed Kirkland at the conspiracy's stash house known as the "Ranch" where drug transactions took place. Specifically, the evidence presented by the Government tended to prove that Kirkland drove Maldonado from Georgia to the Ranch in Marion,

North Carolina, on four occasions; that the Ranch was highly secluded; that notwithstanding the fact that it took Kirkland and Maldonado several hours to get to the Ranch, their visits lasted only a few minutes at a time; that on each occasion that Kirkland drove Maldonado to the Ranch Maldonado would exit the rear passenger area of the vehicle with one to two pounds of methamphetamine in a container; and that Maldonado would return to the vehicle with a plastic bag. A jury could reasonably infer from this evidence that Kirkland knew that a drug transaction was taking place. See Burgos, 94 F.3d at 869 (noting that a conspiracy conviction will be sustained "when the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him") (quoting United States v. Figueroa, 720 F.2d 1239, 1246 (11th Cir. 1983)).

Additionally, on January 30, 2013, Kirkland and Maldonado were stopped by law enforcement and $30,000 in cash was discovered in the vehicle. While it is true that the jury found Kirkland not guilty of possession of a controlled substance on that day, the evidence clearly established that he knew (or at the very least became aware) of the large sum of cash that he was transporting. Despite this discovery, Kirkland continued to associate with members of the conspiracy, as evidenced by the fact that he was

thereafter observed by law enforcement officers who were conducting physical surveillance at a new stash house in Marion.

Of course, merely being present around or associating with others engaged in criminal activity is insufficient, standing alone, to support a conspiracy conviction. Nevertheless, evidence of Kirkland's repeated appearances at the scenes of criminal activity is "material and probative in the totality of the circumstances in determining his participation in a conspiracy." Burgos, 94 F.3d at 869 (quoting in part United States v. Jenkins, 779 F.2d 606, 612 (11th Cir. 1986) (internal quotation marks omitted). Based upon the evidence presented, the jury reasonably could have viewed Kirkland's repeated trips to the Ranch, as well as his trip to the Mendozas' other stash house, "as more than mere presence or association."[4]

Burgos, 94 F.3d at 869.

---

[4] The Government also presented evidence that Kirkland was paid to transport Maldonado. Specifically, Carlos testified that during one drug transaction, Maldonado made reference to the fact that he needed to "pay his driver." In his Rule 29 motion, Kirkland objects to the admission at trial of this and other statements made by co-conspirators, arguing that such statements were not properly admitted under the co-conspirator exception to the hearsay rule, Fed. R. Evid. 801(d)(2)(E), because there was no "independent evidence of Mr. Kirkland's participation in the conspiracy itself." [Doc. 239 at 8 (citing United States v. McCormick, 565 F.2d 286, 289 (4th Cir. 1977))]. Kirkland, however, conceded at trial that the Government had proved the existence of the conspiracy. Thus, in order for the co-conspirators' statements to be admissible, the Government only had to establish some connection between Kirkland and the conspiracy other than the statements themselves. The Government accomplished this not only through Carlos Mendoza's testimony regarding what Kirkland saw (and/or had the opportunity to see) and did, but also through the eyewitness testimony of the agents and officers involved in the investigation who observed Kirkland during the course of the

Kirkland's demeanor, particularly his nervousness and evasiveness during the January 30th and March 23rd traffic stops "is further circumstantial evidence from which a jury reasonably could infer guilt." Burgos, 94 F.3d at 872; United States v. Pulido-Jacobo, 377 F.3d 1124, 1130 (10th Cir. 2004) (permitting inference of existence of conspiratorial agreement where defendant and passenger gave conflicting stories and false statements to police during traffic stop). During the traffic stop on January 30, 2013, Kirkland appeared to be very nervous, as he was breathing heavily, his pulse was beating so strongly as to be visible on his neck, and his hands were shaking uncontrollably. When asked by officers to explain where he and Maldonado were going and why, Kirkland told the officers that he and Maldonado had driven from Georgia to North Carolina to cut a tree that had

---

conspiracy. Such testimony is sufficient under McCormick "to establish the requisite independent evidence" of Kirkland's participation in the conspiracy. Id. Therefore, the declarations of his co-conspirators were admissible against him under Rule 801(d)(2)(E).

While Maldonado's reference to needing to "pay his driver" was admissible, such evidence is of little probative value in this case. It is true that evidence of payment may constitute evidence that a defendant "had a financial stake in the conspiracy." United States v. Johnston, 146 F.3d 785, 790 (10th Cir. 1998). In the present case, however, there was no evidence presented as to the amount paid to Kirkland. Evidence of the amount paid may have been helpful in determining whether Kirkland was knowingly participating in the conspiracy: a nominal payment would tend to suggest that the payment was intended as gas money, while a more substantial sum would tend to suggest that the payment was intended to compensate the driver for acting as a drug courier. Maldonado's oblique reference to the need to "pay his driver," without more, offers little insight into these issues. Nevertheless, in light of all the circumstantial evidence presented, the jury was entitled to infer that Maldonado's payment to Kirkland was at least probative of his participation in the conspiracy.

fallen on a carport at a friend's home, that he cut trees for a living, that it took almost an hour to complete the job, and that they used saws. At the time of the traffic stop, however, neither Kirkland nor Maldonado was wet or dirty, even though it had been raining all day, and a search of the vehicle revealed no saws or other equipment necessary to cut down a tree or section it after it was felled. Kirkland was stopped again two months later, after law enforcement saw him at the new stash house employed by Rigoberto, Carlos, and Vergara in Marion, North Carolina. Kirkland again appeared to be very nervous with shaky hands and a visible pulse on his neck. When Kirkland was asked where he was going, he reported that he had come up from Georgia to look for his girlfriend, that he had not stopped anywhere prior to the vehicle stop (a fact which the officers knew not to be true), that he did not know where he was going to meet with his girlfriend, and that she had a relative in the area but he could not give the address or even general location of that person. From Kirkland's behavior, the jury could have reasonably inferred his knowledge that he was participating in an illegal activity. See Anderson, 747 F.3d at 65 (holding that defendant's nervousness and false exculpatory statements during law enforcement encounters created reasonable inference of knowledge of illegal activity).

All of this evidence, however, is sufficient to prove only that Kirkland knowingly participated in a conspiracy to engage in some sort of unlawful activity. Such evidence, standing alone, would not be enough. In order to convict Kirkland of the conspiracy charged, the Government had to prove beyond a reasonable doubt that Kirkland *knew* that the conspiracy involved *controlled substances*, and that he participated in the conspiracy with the specific intent that *controlled substances* be possessed and distributed. See Anderson, 747 F.3d at 61. Simply showing that the Defendant participated in a conspiracy to do *something illegal* is not enough. As the Fourth Circuit has explained:

> To satisfy that burden, the Government need not prove that the defendant knew the particulars of the conspiracy or all of his coconspirators. Indeed, a defendant properly may be convicted of conspiracy without full knowledge of all of the conspiracy's details, but if he joins the conspiracy with an *understanding of the unlawful nature* thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy, even though he had not participated before and even though he played only a minor part.

Burgos, 94 F.3d at 858 (internal citations omitted) (emphasis added). The evidence regarding Kirkland's knowledge of the specific nature of this conspiracy is obviously the weakest point in the Government's evidence.

On this issue, Carlos testified that Maldonado delivered one to two pounds of crystal meth at a time, and that each time the meth was delivered, Maldonado exited the passenger compartment of the vehicle carrying the drugs in a "clear" or "see-through" plastic container.[5]  Kirkland was in the driver's seat, only a few feet away.   Under these circumstances, it was entirely reasonable for the jury to infer that Kirkland saw the methamphetamine and was thus aware that the unlawful activity being undertaken was the distribution of controlled substances, as opposed to some other unlawful activity, such as the possession of stolen firearms or counterfeit documents or currency.[6]

In reviewing the evidence, the Court is very much mindful that there are other plausible, innocent explanations for the Defendant's conduct.  To obtain a conviction, however, the Government need not "exclude every

---

[5] On direct examination, Carlos testified only that the container was "clear."  This is significant, as "clear" can mean colorless and does not necessarily mean "transparent," although it is possible to infer such a meaning from use of the term in describing a container.  On re-direct examination, however, Carlos added that the container was "see-through."  This testimony, as clarified, when considered along with the evidence that the Defendant had the opportunity to see the container, provided a reasonable basis from which the jury could conclude that the Defendant saw the contents of the container and therefore knew that Maldonado was in possession of methamphetamine.

[6] In light of this circumstantial evidence, this case is distinguishable from United States v. Blue, __ F.3d __, 2015 WL 8479810 (4th Cir. Dec. 10, 2015), in which the Fourth Circuit vacated a conspiracy conviction where the Government failed not only to establish any nexus between the defendant and the apartment where the drugs were found, but also failed to present any evidence that the defendant even knew about the heroin located in the apartment.

reasonable hypothesis other than that of guilt." Burgos, 94 F.3d at 866 (quoting Holland, 348 U.S. at 139). The Court, therefore, cannot "find the evidence of guilt insufficient simply because [the Government] failed to disprove every possible hypothesis regarding [the defendant's] purported innocence." Burgos, 94 F.3d at 866. Further, while each of these facts relied upon by the Government, when viewed in isolation, may seem to be innocuous or may be explained by some innocent reason, "such an argument misses the mark; [the court's] inquiry is whether *any* reasonable jury could find the elements of the crime, on these facts, beyond a reasonable doubt, not whether [the defendant] is plausibly not guilty." Burgos, 94 F.3d at 871 (citation and internal quotation marks omitted; emphasis in original). As the Third Circuit has explained: "Reversing the jury's conclusion simply because another inference is possible – or even equally plausible – is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges, which is that the evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 432 (3ᵈ Cir. 2013) (internal quotation marks and citation omitted).

Kirkland may not have known the full scope of the conspiracy or all the members of the conspiracy, and he may not have taken part in the full range of the conspiracy's activities over the entire period of the conspiracy's existence. None of those facts, however, are fatal to the Government's case, nor do they undermine the sufficiency of the evidence supporting the jury's verdict on the conspiracy count. As Maldonado's occasional driver, Kirkland may not have been involved in the packing or distribution of crystal meth, but the evidence is sufficient to support the conclusion that he was a low level participant in the conspiracy, and that is all the law requires. See Burgos, 94 F.3d at 858 (noting that a "variety of conduct" can constitute participation in drug conspiracy); United States v. Alverez, 235 F.3d 1086, 1090 (8th Cir. 2000) (recognizing that "[t]ransportation is a necessary part of illegal drug distribution") (citation omitted).

Considering the totality of the evidence presented, and construing all reasonable inferences in the Government's favor, the Court is constrained to conclude that the jury's verdict was rational and should be upheld. See United States v. Kellam, 568 F.3d 125, 146 (4th Cir. 2009) ("The sufficiency of the evidence to prove an alleged conspiracy is evaluated by whether any *rational* trier of fact could have found the essential elements of the conspiracy . . . beyond a reasonable doubt.") (citation omitted and emphasis added).

## V. CONCLUSION

In summary, the Court concludes that there is substantial evidence to support the Defendant's drug conspiracy conviction. Accordingly, the Defendant's Rule 29 Motion is denied.

## VI. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Rule 29 Motion [Doc. 239] is **DENIED**.

**IT IS SO ORDERED.**

Signed: December 31, 2015

Martin Reidinger
United States District Judge